# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

WASEEM DAKER,

      Plaintiff,

  v.

COMMISSIONER GREGORY DOZIER, et al.,

      Defendants.

CIVIL ACTION NO.: 6:17-cv-110

---

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Georgia State Prison in Reidsville, Georgia, filed this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use Institutionalized Persons Act ("RLUIPA"). For the reasons which follow, the Court **DENIES** Plaintiff leave to proceed *in forma pauperis*. Additionally, I **RECOMMEND** that the Court **DISMISS** Plaintiff's Complaint, **without prejudice** and **DENY** Plaintiff *in forma pauperis* status on appeal.[1]

---

[1] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair. . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A Magistrate Judge's Report and Recommendation ("R&R") provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union, 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating that a party has notice of a district court's intent to *sua sponte* grant summary judgment where a magistrate judge issues a report recommending the *sua sponte* granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting that the R&R served as notice that claims would be *sua sponte* dismissed). This Report and Recommendation constitutes fair notice to Plaintiff that his suit is barred and due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the district judge will review *de novo* properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562-TWT-JFK, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining that the magistrate judge's R&R constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

## BACKGROUND

In his Complaint, Plaintiff levies a litany of claims against dozens of Defendants regarding his confinement at Georgia State Prison. (Doc. 1-1.) Plaintiff contends that all of these Defendants maintain a policy limiting the length of a male prisoner's facial hair. (Id. at p. 9.) He contends that Georgia Department of Corrections written policy provides that shaving clippers should be sanitized after every use. Id. He maintains that sanitizing the clippers prevents the spread of HIV, hepatitis, and other infectious diseases. Id. However, Plaintiff maintains, Defendants disregard this policy and use clippers that have not been sanitized or that are broken. (Id.at pp. 9–10.)

Plaintiff also levies allegations against Defendants Hutcheson and Shuemake, who are correctional officers at Georgia State Prison, regarding an incident that occurred on July 6, 2017. (Id. at pp. 10–12.) Plaintiff claims that these officers escorted him from his cell to the prison's barbershop. Id. At the barbershop, Plaintiff refused to have another inmate cut his hair and demanded that Hutcheson and Shuemake allow him to cut his own hair. Id. He told them that he needed to shave his own hair so that he could insure that he was shaved in accordance with his religious beliefs. Id. When Plaintiff persisted in his refusal to allow another inmate to cut his hair, the officers slammed him to the ground, forcibly restrained him, and shaved him with clippers that had not been sanitized. Id. He contends that the officers then placed him on strip cell status and stripped him down to his undergarments in front of female staff members, in contradiction of Plaintiff's religious beliefs. Id. Plaintiff also makes allegations regarding the confiscation of his personal property following this incident as well as claims that his due process rights were violated at a July 28, 2017 disciplinary hearing. (Id. at pp. 11–12.)

Plaintiff contends that the use of excessive force to shave him as well as cutting his hair with unsanitary clippers violates his Eighth Amendment rights.  (Id. at p. 13.)  He also maintains that Defendants violated his rights to religious exercise guaranteed by the First Amendment to the United States Constitution and RLUIPA by stripping him to his underwear in front of females and by confiscating his property.  Id.  Further, he makes claims of due process violations attendant to the confiscation of his property and his disciplinary hearing.  Id.

## STANDARD OF REVIEW

Plaintiff  brought this action *in forma pauperis* under 42 U.S.C. § 1983.  (Doc. 2.)  Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress.  Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).  Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity.  Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R.

Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We

have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I.   Three Strikes Dismissal Under Section 1915(g)

A prisoner, such as Plaintiff, attempting to proceed *in forma pauperis* in a civil action in federal court must comply with the mandates of the Prison Litigation Reform Act ("PLRA"). Pertinently, 28 U.S.C. § 1915(g) of the PLRA provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The Eleventh Circuit Court of Appeals has explained that "[t]his provision of the PLRA, 'commonly known as the 'three strikes' provision,' requires frequent filer prisoners to prepay the entire filing fee before federal courts may consider their lawsuits and appeals." Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998) (quoting Lyon v. Krol, 127 F.3d 763, 764 (8th Cir. 1997)).[2] Dismissals for providing false filing-history information and failing to comply with court orders both fall under the category of "abuse of the judicial process", which the Eleventh Circuit has held to be a "strike-worthy" form of dismissal under Section 1915(g). See id. at 731 (dismissing for failure to disclose prior litigation is "precisely the type of strike that Congress envisioned when drafting section 1915(g)"); Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1544 (11th Cir. 1993) (characterizing failure to comply with court orders as "abuse of the judicial process").

---

[2]   The Eleventh Circuit upheld the constitutionality of Section 1915(g) in Rivera. In so doing, the Court concluded that Section 1915(g) does not violate an inmate's rights to access to the courts, to due process of law, or to equal protection, or the doctrine of separation of powers. Rivera, 144 F.3d at 721–27.

The Eleventh Circuit has held that a prisoner barred from proceeding *in forma pauperis* due to the "three strikes" provision in § 1915(g) must pay the entire filing fee[3] when he initiates suit. <u>Vanderberg v. Donaldson</u>, 259 F.3d 1321, 1324 (11th Cir. 2001). Therefore, the proper procedure for a district court faced with a prisoner who seeks *in forma pauperis* status but is barred by the "three strikes" provision is to dismiss the complaint without prejudice. <u>Dupree v. Palmer</u>, 284 F.3d 1234, 1236 (11th Cir. 2002).

In <u>Daker v. Commissioner, Georgia Department of Corrections</u>, 820 F.3d 1278 (11th Cir. 2016), the Eleventh Circuit had occasion to consider whether Plaintiff was a three-striker within the meaning of Section 1915(g) based on six (6) of Plaintiff's previous filings that the Middle District of Georgia cited as being "strikes". The cases the Middle District of Georgia counted as strikes were: (1) <u>Daker v. Head</u>, No. 01-14624 (11th Cir. Jan. 25, 2002) (an interlocutory appeal from a civil lawsuit the Eleventh Circuit dismissed for lack of jurisdiction); (2) <u>Aziyz v. Tremble</u>, No. 05-11696 (11th Cir. May 9, 2005) (same); (3) <u>Daker v. Barrett</u>, No. 03-15771 (11th Cir. July 26, 2004) (Eleventh Circuit dismissed an appeal from a civil lawsuit "for want of prosecution because [Daker] has failed to file [an] appellant brief within the time fixed by the rules"); (4) <u>In re Daker</u>, No. 12-12073 (11th Cir. July 12, 2012) (dismissal of a petition for a writ of mandamus "for want of prosecution" under Eleventh Circuit Rule 42-1(b) "because . . . Daker failed to pay the $450 docket fee . . . within the time fixed by the rules"); (5) <u>In re Daker</u>, No. 12-12072 (11th Cir. Aug. 6, 2012) (same); and (6) <u>Georgia v. Daker</u>, No. 12-12519 (11th Cir. Nov.

---

[3] The applicable filing fee is now $400.00. "The entire fee to be paid in advance of filing a civil complaint is $400. That fee includes a filing fee of $350 plus an administrative fee of $50, for a total of $400. A prisoner who is granted *in forma pauperis* status will, instead, be assessed a filing fee of $350 and will not be responsible for the $50 administrative fee. A prisoner who is denied *in forma pauperis* status must pay the full $400, including the $350 filing fee and the $50 administrative fee, before the complaint will be filed." <u>Callaway v. Cumberland Cty. Sheriff Dep't</u>, No. CIV. 14-4853 NLH, 2015 WL 2371614, at *1 (D.N.J. May 18, 2015); <u>see also</u> <u>Owens v. Sec'y Fla. Dep't of Corr.</u>, Case No.: 3:15cv272/MCR/EMT, 2015 WL 5003649 (N.D. Fla. Aug. 21, 2015) (noting that the filing fee applied to cases in which a prisoner-plaintiff is denied *in forma pauperis* status is $400.00).

5, 2012) (same). The Eleventh Circuit noted that, in the last three dismissals listed, only "a single judge of this Court denied Daker's petitions to proceed *in forma pauperis* because his filings were 'frivolous.'" Daker, 820 F.3d at 1282. The Eleventh Circuit determined that the three appeals, which were dismissed for lack of prosecution, could not count as strikes because Daker's applications to proceed *in forma pauperis* on appeal were denied by only one judge on the panel as being frivolous. Id. at 1284–85. The Eleventh Circuit reasoned that the text of Section 1915(g) mandates that the reason for the dismissal of a cause of action or an appeal—as opposed to a denial of an application to proceed *in forma pauperis*—had to be because the cause of action or appeal was frivolous, malicious, or failed to state a claim. Id. at 1285. In addition, the Eleventh Circuit stated that a dismissal for lack of jurisdiction was likewise not a determination on the merits of a litigant's cause of action or appeal. Id. at 1284.

Thus, the Eleventh Circuit concluded that the six (6) cases the Middle District of Georgia used to label Plaintiff a three-striker did not constitute strikes under the language of Section 1915(g). However, the Eleventh Circuit made clear that it "express[ed] no view on whether Daker has any other strikes . . . [or] as to whether one or more of the six dismissals might have failed to qualified as strikes for other reasons." Daker, 820 F.3d at 1286. Therefore, the Eleventh Circuit did not determine that Plaintiff is not a three-striker. Rather, it only determined that the six (6) particular cases the Middle District of Georgia used did not constitute strikes for the reasons the district court found.

Reviewing Plaintiff's history of filings reveals that he indeed has brought more than three civil actions or appeals which count as strikes under Section 1915(g). In reaching this conclusion, this Court has not utilized the same six (6) cases the Middle District of Georgia counted as strikes. Instead, at least the following cases, which do not include any of the cases

the Eleventh Circuit found are not strikes, constitute strikes under Section 1915(g): (1) <u>Daker v. Warren</u>, No. 13-11630-B (11th Cir. Mar. 4, 2014) (appeal dismissed after finding it frivolous); (2) Compl., <u>Daker v. Mokwa</u>, 2:14cv395-UA-MRW (C.D. Cal. Feb. 4, 2014), ECF No. 2 (dismissed as being frivolous, malicious, or failing to state a claim); (3) <u>Daker v. Robinson</u>, 1:12-cv-00118-RWS (N.D. Ga. Sept. 12, 2013) (complaint dismissed based on Plaintiff's failure to follow a court order); and (4) <u>Daker v. Dawes</u>, 1:12-cv-00119-RWS (N.D. Ga. Sept. 12, 2013) (same). The causes of action and appeals this Court cites to as being "strikes" were dismissed for being frivolous, malicious, or failing to state a claim for relief. These causes of action and appeals were not dismissed on any other ground which failed to address the merits of Plaintiff's claims.[4]

This same review also reveals scores of other civil actions and appeals which were dismissed and/or count as strikes under Section 1915(g). <u>See</u> <u>In re Daker</u>, No. 1:11-CV-1711-RWS, 2014 WL 2548135, at *2 (N.D. Ga. June 5, 2014) (summarizing Plaintiff's litigation history). This Court and other courts have noted that Plaintiff is a serial litigant with a significant history of filing frivolous lawsuits. <u>See e.g.</u>, R&R, Order, <u>Daker v. Head, et al.</u>, 6:14-cv-47 (S.D. Ga. Sept. 8, 2014), ECF Nos. 13, 14 (denying Plaintiff leave to proceed <i>in forma pauperis</i> due to three striker status); <u>Daker v. Warren</u>, No. 1:11-CV-1711-RWS, 2014 WL 806858, at *1 (N.D. Ga. Feb. 28, 2014) ("Waseem Daker is an extremely litigious state prisoner[.]"). In light of Plaintiff's litigation history, the Eleventh Circuit "has determined that the 'three strikes' provision of the Prison Litigation Reform Act of 1995 is applicable to" him. <u>See, e.g.</u>, Letter dated May 29, 2014, in <u>Daker v. Comm'r</u>, No. 14–12139 (11th Cir. 2014); Letter

---

[4] While the last two causes of action this Court cites were dismissed based on Plaintiff's failure to follow the orders of a court, the Eleventh Circuit has considered cases dismissed for this reason (or those representing an abuse of the judicial process) to be "strike-worthy". <u>See</u> <u>Rivera</u>, 144 F.3d at 731; <u>Malautea</u>, 987 F.2d at 1544.

dated April 18, 2014, in <u>Daker v. Comm'r</u>, No. 14–11571 (11th Cir. 2014) (same). Indeed, the Middle District of Georgia recently had occasion to revisit Plaintiff's three-striker status and held that "Plaintiff has had more than three of his cases or appeals dismissed on the statutorily-enumerated grounds [of Section 1915(g)]." <u>Daker v. Comm'r Homer Bryson</u>, No. 5:16-CV-538-CAR-MSH, 2017 WL 3584910, at *2 (M.D. Ga. Aug. 17, 2017). These cases, as well as those cited above, make clear that Plaintiff has filed at least three previously dismissed cases or appeals which qualify as strikes under Section 1915(g).

Thus, Plaintiff may not proceed *in forma pauperis* in this action unless he can demonstrate that he meets the "imminent danger of serious physical injury" exception to Section 1915(g). "In order to come within the imminent danger exception, the Eleventh Circuit requires 'specific allegations of present imminent danger that may result in serious physical harm.'" <u>Odum v. Bryan Cty. Judicial Circuit</u>, No. CV407-181, 2008 WL 766661, at *1 (S.D. Ga. Mar. 20, 2008) (quoting <u>Skillern v. Jackson</u>, No. CV606-49, 2006 WL 1687752, at *2 (S.D. Ga. June 14, 2006) (citing <u>Brown v. Johnson</u>, 387 F.3d 1344, 1349 (11th Cir. 2004))). General and conclusory allegations not grounded in specific facts indicating that injury is imminent cannot invoke the Section 1915(g) exception. <u>Margiotti v. Nichols</u>, No. CV306-113, 2006 WL 1174350, at *2 (N.D. Fla. May 2, 2006). "Additionally, 'it is clear that a prisoner cannot create the imminent danger so as to escape the three strikes provision of the PLRA.'" <u>Ball v. Allen</u>, No. 06-0496, 2007 WL 484547, at *2 (S.D. Ala. Feb. 8, 2007) (citing <u>Muhammad v. McDonough</u>, No. CV306-527-J-32, 2006 WL 1640128, at *1 (M.D. Fla. June 9, 2006)). Moreover, a harm that has already occurred or danger that has now passed cannot justify skirting the three strike bar. <u>Medberry v. Butler</u>, 185 F.3d 1189, 1193 (11th Cir. 1999) ("Prisoner's allegation that he faced imminent danger sometime in the past is an insufficient basis to allow

him to proceed *in forma pauperis* pursuant to the imminent danger exception to the statute."); see also Abdul-Akbar v. McKelvie, 239 F.3d 307, 315 (3d Cir. 2001) ("By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred.").

Plaintiff should not be excused from prepaying the filing fee under the imminent danger of serious physical injury exception. As an initial matter, the overwhelming majority of Plaintiff's claims do not approach Section 1915(g)'s requirement that the claim address a serious risk of imminent physical danger. His claims regarding Defendants Hutcheson and Shuemake's prior use of force center on physical injuries that have already occurred, not dangers that Plaintiff faces in the imminent future. Likewise, his claims based on past shaving with unsanitary hair clippers seek redress for past injuries and do not aim to prevent future physical injury. Further, his claims that Defendants violated his religious beliefs, that his property was confiscated, and that he was not afforded due process at his disciplinary hearing, do not allege physical injury much less a threat of future physical injury.

Plaintiff's only claims that approach the "imminent danger of serious physical injury" exception to Section 1915(g) are his claims for declaratory and injunctive relief centered on his allegations that Defendants use hair clippers that have not been cleaned or that are broken. However, Plaintiff's claims are generalized and conclusory allegations that do not contain any specific facts that Plaintiff himself actually faces a real threat of physical injury. While he alleges that the clippers are "unsanitized", he does not explain what he means by this description. He also provides no specifics regarding the frequency with which the clippers are used or the alleged infectious diseases to which Defendants are supposedly exposing him. Courts have frequently found that such generalized allegations do not sufficiently allege that a prisoner faces

"imminent danger of serious physical injury" to meet Section 1915(g)'s exception for three strikers. See, e.g., Daker v. Dozier, No. 5:17-CV-0025-CAR, 2017 WL 3037420, at *6 (M.D. Ga. July 18, 2017) (finding plaintiff's allegations that "he lives with inmates who throw feces, has to wait for hours before the feces is cleaned, and [that] defendants have ignored his complaints about the unsanitary conditions and requests for cleaning supplies" insufficient to state a claim of imminent danger of serious physical injury); Renoir v. Brown, No. CIV A 707CV00166, 2007 WL 1052477, at *1 (W.D. Va. Apr. 5, 2007) (denial of sharp razors does not involve future serious physical injury); Ball v. Allen, No. CIV.A. 06-0496-CG-M, 2007 WL 484547, at *1 (S.D. Ala. Feb. 8, 2007) (allegations of no cleaning supplies for cells, clean clothes only twice per week, unsanitary showers, inadequate fire safety in cells, inadequate lighting, inadequate, unsanitary, and contaminated food and beverages, are insufficient to overcome the bar of § 1915(g)); Bolongogo v. Horn, Civil No. 97-4378, 1997 WL 599160 (E.D. Pa. July 23, 1997) (allegations of prison overcrowding, double bunking, placing two inmates per cell, unsanitary conditions in the general prison population cells and in the restricted housing units, food containing unlabeled, cancerous substances, strip searches, inadequate exercise facilities and law libraries not sufficient to establish imminent danger of serious physical injury). Plaintiff's claim on this front is "insufficient to demonstrate that plaintiff is, in fact, in imminent danger of physical injury. What it demonstrates is that plaintiff is a seasoned vexatious litigant who has read 28 U.S.C. § 1915(g) and is manipulating it to serve his ends." McNeil v. United States, 2006 WL 581081, *3 n. 3 (W.D. Wash. March 8, 2006) (internal quotes omitted); see also Daker v. Bryson, No. 6:16-CV-57, 2017 WL 242615, at *1 (S.D. Ga. Jan. 19, 2017), report and recommendation adopted, No. 6:16-CV-57, 2017 WL 1053082 (S.D. Ga. Mar. 20, 2017).

Moreover, Plaintiff fails to connect his claims regarding the future threatened use of unsanitary hair clippers to any specific Defendant. Plaintiff names dozens of Defendants including administrators such as the Commissioner of the Georgia Department of Corrections as well as the prison chaplain, the chief counselor, and several correctional officers. (Doc. 1-1, pp. 7–8.) He makes conclusory allegations that "all Defendants maintain a custom in GDC Prisons of . . . refusing to sanitize clippers and of using clippers that are unsanitized [sic] or damaged or both . . . ." (Id. at p. 9.) However, he fails to allege any specific facts to support this allegation against any one of the Defendants, much less all of them. The most that he alleges is that Officer Hutcheson shaved him using unclean clippers on July 7, 2017. (Id. at p. 11.) Plaintiff, however, does not allege that Officer Hutcheson ever shaved him on any other instances or any facts demonstrating a likelihood that Officer Hutcheson would shave him in the future. As to his claims for prospective relief regarding shaving with unsanitary clippers, Plaintiff has not offered sufficient facts to plausibly allege that any particular Defendant has some connection to the allegedly unconstitutional acts from which he seeks relief. Luckey v. Harris, 860 F.2d 1012, 1015–16 (11th Cir. 1988); see also Farmer v. Brennan, 511 U.S. 825, 828 (1994) ("In order to be held liable under the Eighth Amendment, a prison official must know that the inmate faces a substantial risk of serious harm and then disregard that risk."); Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009) (Section 1983 liability must be based on something more than defendant's supervisory position or a theory of respondeat superior). Plaintiff's conclusory allegations do not meet even the less stringent pleading standard applied to claims of pro se litigants.

For all of these reasons, Section 1915(g) bars Plaintiff from proceeding *in forma pauperis* in this case. Should Plaintiff choose to prosecute these claims while incarcerated, he must bring a separate action and pay the full filing fee.

## II.    Dismissal for Abuse of Judicial Process

As previously stated, Section 1915 requires a court to dismiss a prisoner's action if, at any time, the court determines that it is frivolous or malicious, fails to state a claim, or seeks relief from an immune defendant. 28 U.S.C. § 1915(e)(2)(B). Significantly, "[a] finding that the plaintiff engaged in bad faith litigiousness or manipulative tactics warrants dismissal" under Section 1915. Redmon v. Lake Cty. Sheriff's Office, 414 F. App'x 221, 225 (11th Cir. 2011) (alteration in original) (quoting Attwood v. Singletary, 105 F.3d 610, 613 (11th Cir. 1997)). In addition, Federal Rule of Civil Procedure 11(c) permits a court to impose sanctions, including dismissal, for "knowingly fil[ing] a pleading that contains false contentions." Id. at 225–26 (citing Fed. R. Civ. P. 11(c)). Again, although *pro se* pleadings are to be construed liberally, "a plaintiff's *pro se* status will not excuse mistakes regarding procedural rules." Id. at 226.

Relying on this authority, the Court of Appeals for the Eleventh Circuit has consistently upheld the dismissal of cases where a pro se prisoner plaintiff has failed to disclose his previous lawsuits as required on the face of the Section 1983 complaint form. See, e.g., Redmon, 414 F. App'x at 226 (*pro se* prisoner's nondisclosure of prior litigation in Section 1983 complaint amounted to abuse of judicial process resulting in sanction of dismissal); Shelton v. Rohrs, 406 F. App'x 340, 341 (11th Cir. 2010) (same); Young v. Sec'y Fla. for Dep't of Corr., 380 F. App'x 939, 941 (11th Cir. 2010) (same); Hood v. Tompkins, 197 F. App'x 818, 819 (11th Cir. 2006) (same). Even where the prisoner has later provided an explanation for his lack of candor, the Court has generally rejected the proffered reason as unpersuasive. See, e.g., Redmon, 414 F. App'x at 226 ("The district court did not abuse its discretion in concluding that Plaintiff's explanation for his failure to disclose the Colorado lawsuit—that he misunderstood the form— did not excuse the misrepresentation and that dismissal was a proper sanction."); Shelton, 406 F.

App'x at 341 ("Even if [the plaintiff] did not have access to his materials, he would have known that he filed multiple previous lawsuits."); <u>Young</u>, 380 F. App'x at 941 (finding that not having documents concerning prior litigation and not being able to pay for copies of same did not absolve prisoner plaintiff "of the requirement of disclosing, at a minimum, all of the information that was known to him"); <u>Hood</u>, 197 F. App'x at 819 ("The objections were considered, but the district court was correct to conclude that to allow [the plaintiff] to then acknowledge what he should have disclosed earlier would serve to overlook his abuse of the judicial process.").

Another district court in this Circuit recently explained the importance of this information as follows:

> The inquiry concerning a prisoner's prior lawsuits is not a matter of idle curiosity, nor is it an effort to raise meaningless obstacles to a prisoner's access to the courts.  Rather, the existence of prior litigation initiated by a prisoner is required in order for the Court to apply 28 U.S.C. § 1915(g) (the "three strikes rule" applicable to prisoners proceeding in forma pauperis).  Additionally, it has been the Court's experience that a significant number of prisoner filings raise claims or issues that have already been decided adversely to the prisoner in prior litigation. . . . Identification of prior litigation frequently enables the Court to dispose of successive cases without further expenditure of finite judicial resources.

<u>Brown v. Saintavil</u>, No. 2:14-CV-599-FTM-29, 2014 WL 5780180, at *3 (M.D. Fla. Nov. 5, 2014) (emphasis omitted).

Plaintiff misrepresented his prolific litigation history in his Complaint.  The plain language of the complaint form is clear—asking whether Plaintiff has brought any lawsuits in federal court while incarcerated or detained.  (Doc. 1-1, p. 2.)  Thus, regardless of the outcome of Plaintiff's prior lawsuits, his initiation of those lawsuits is the precise type of activity for which this prompt requires disclosure.  Nonetheless, Plaintiff failed to fully disclose his prior litigation history.  While he claimed that he did not have full records of his past cases, he also failed to disclose cases that were still pending.  Perhaps more egregiously, Plaintiff denied that any of his prior lawsuits had been dismissed as frivolous or malicious or for failure to state a claim.  (Doc.

1-1, p. 3.)  As noted above and previously found by other courts, Plaintiff has had not just one but many actions that fit this description.[5]  Plaintiff's dishonesty provides another ground for dismissal of this case.

## III.    Dismissal for Failure to Exhaust GSP's Administrative Remedies Before Filing Suit

Even if Plaintiff's lawsuit was not barred by Section 1915(g) and his own dishonesty, the Court should still dismiss his case due to his failure to exhaust his administrative remedies.

### A.    Exhaustion at Frivolity Review Stage

Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint.  Jones v. Bock, 549 U.S. 199, 216 (2007).  However, the normal pleading rules still apply, and when an affirmative defense appears on the face of a complaint making it clear that a prisoner cannot state a claim for relief, dismissal is warranted under the screening process set out in 28 U.S.C. § 1915A.  Id. at 214–15.  "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008) (internal punctuation and citation omitted).  Thus, when a prisoner admits in his complaint that he has not exhausted the grievance process, the Court should dismiss the lawsuit during the frivolity screening.  See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail,

---

[5] Courts have also recognized that Plaintiff has "repeatedly abused the judicial process by filing IFP affidavits that conceal and/or misstate his true assets and income."  In re Daker, No. 1:11-CV-1711-RWS, 2014 WL 2548135, at *2.  Indeed, the Eleventh Circuit recently upheld a district court's dismissal of two of Plaintiff's lawsuits based on the district court's findings that Plaintiff was not indigent.  Daker v. Robinson, No. 13-14873, 2017 WL 3381819, at *1 (11th Cir. Aug. 7, 2017) (noting that Plaintiff's listed assets include a home valued at $395,000).  Plaintiff's allegations of poverty in this case are somewhat more detailed than those made in other cases.  (Doc. 2.)  However, it still appears that he is attempting to understate his assets in order to shirk his obligation to pay the full filing fee.

CV410-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in <u>Jones</u> . . . forbids the Court from dismissing a complaint pursuant to § 1997e(a) if it is clear from the face.").

### B.  Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court.  <u>See Porter v. Nussle</u>, 534 U.S. 516, 524 (2002).  Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted."  In <u>Porter</u>, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory.  534 U.S. at 523; <u>see also</u> <u>O'Brien v. United States</u>, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring [] his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" <u>Green v. Sec'y for Dep't of Corr.</u>, 212 F. App'x 869, 871 (11th Cir. 2006) (quoting <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)).  Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Moreover, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. Johnson, 418 F.3d at 1157–59; Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'" Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)). The purpose of

Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance. Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted). "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'" Id. (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)). Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits. Id.

### C. Georgia Department of Corrections' Grievance Process

Within the Georgia Department of Corrections, the grievance procedure is a two-step process. See Shaw v. Toole, No. 6:14-CV-48, 2015 WL 4529817, at *5 (S.D. Ga. July 27, 2015), *report and recommendation adopted*, No. CV 614-048, 2015 WL 5025478 (S.D. Ga. Aug. 24, 2015) (citing Georgia Department of Corrections' Standard Operating Procedure IIB05–0001 ("SOP IIB05–0001")). The process commences with the filing of a grievance, which must be filed within ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance." Id. The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it. Id. The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond. An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired. Id. An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired. The

inmate has seven (7) calendar days in which to file this appeal, and the Commissioner has 100 calendar days after receipt to render a decision. Id. These time limits may be waived for good cause. Id.

**D.      Plaintiff's Failure to Exhaust**

It is apparent from the face of Plaintiff's Complaint that he did not exhaust his available administrative remedies prior to filing this lawsuit. The complaint form that Plaintiff used to file his Complaint asks whether Plaintiff filed a grievance, and Plaintiff indicated that he had filed several. (Doc. 1-1, p. 3.) However, Plaintiff then admitted that he did not appeal any adverse decision to the highest level possible in the administrative procedure. (Id. at p. 4.) Thus, Plaintiff admits that he did not "properly take each step within the administrative process." Bryant, 530 F.3d at 1378.

Plaintiff argues that he did not file any appeal on his grievances because the "GDC grievance procedure is a rubber stamp sham process." (Doc. 1-1 at p. 4.) The Supreme Court, however, has established that "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S ___, 136 S. Ct. 1850, 1856 (June 6, 2016). Though the Supreme Court rejected a "special circumstances" exception to exhaustion in Ross, it reiterated that a prisoner need only exhaust those remedies which were available to him. ___ U.S. ___, 2016 WL 3128839, at *7 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.") The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. First, the Court stated that, in some instances, the administrative procedure "operates as a

simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Thus, if the administrative procedure lacks authority or if the officials with apparent authority "decline ever to exercise it," the inmate has no obligation to exhaust the remedy. Id. Second, when administrative remedies are so confusing that they are "essentially 'unknowable,'" exhaustion is not required. Id., ___ U.S. ___, 2016 WL 3128839, at *8 (citing Goebert v. Lee Cty., 510 F.3d 1312, 1323 (11th Cir. 2007); Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008)). Lastly, exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. However, the Supreme Court recognized that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." Id., ___ U.S. ___, 2016 WL 3128839, at *7.

Though Plaintiff makes conclusory allegations that the grievance procedure at GSP was a "dead end", he provides no factual contentions in support of that allegation. Moreover, the plain face of his Complaint belies any such contention. Plaintiff filed this action on August 3, 2017, and the events giving rise to his claims occurred on July 3, 2017. (Doc. 1-1.) Thus, on the plain face of Plaintiff's Complaint, he did not even wait the forty days for the Warden to respond to his initial grievance (as GSP policy provides) before filing this lawsuit. If the grievance coordinator rejected his grievances, then Plaintiff could have appealed to the Commissioner's Office and received a response within 100 days. Rather than pursue that step, Plaintiff shunned the administrative process. Given that Plaintiff failed to take basic steps to pursue GSP's administrative remedies, he cannot now complain that that those remedies were unavailable to him.

## IV.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[6]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Additionally, Daker's status as a three-striker prevents him from filing an appeal *in forma pauperis*, just as it prevents him from filing this action without prepaying the filing fee.  Thus, the Court should **DENY** him *in forma pauperis* status on appeal.

---

[6]  A certificate of appealability is not required in this Section 1983 action.

## CONCLUSION

For the above-stated reasons, the Court **DENIES** Plaintiff's Motion to Proceed *in Forma Pauperis*. (Doc. 2.) For these same reasons, I **RECOMMEND** that the Court **DISMISS** Plaintiff's Complaint, **without prejudice**, and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 5th day of October, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA