IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

WASEEM DAKER,

        Plaintiff,

        v.

COMMISSIONER GREGORY DOZIER, et al.,

        Defendants.

CIVIL ACTION NO.: 6:17-cv-110

## O R D E R

Presently before the Court are Plaintiff's Objections to the Magistrate Judge's Report and Recommendation dated October 5, 2017, (doc. 4), and six (6) other pleadings Plaintiff has filed since the Magistrate Judge issued his Report and Recommendation. (Docs. 5–7, 9, 10, 12.) Plaintiff initiated this action on August 11, 2017, when he filed his Complaint and Motion to Proceed *in Forma Pauperis*. (Docs. 1, 2.) The Honorable R. Stan Baker recommended the Court dismiss Plaintiff's Complaint on three grounds: (1) Plaintiff has filed at least three previously dismissed cases or appeals which qualify as strikes under 28 U.S.C. § 1915(g) of the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff abused the judicial process through his lack of candor regarding his extensive litigation history in his Complaint; and (3) Plaintiff failed to exhaust his available administrative remedies, as required by 42 U.S.C. § 1997e(a). (Doc. 4.)

After an independent and *de novo* review of the entire record, the undersigned concurs with the Magistrate Judge's Report and Recommendation. Accordingly, for the reasons set forth below, the Court **OVERRULES** Plaintiff's Objections, (docs. 8, 11), and **ADOPTS** the Magistrate Judge's Report and Recommendation, (doc. 4), as the opinion of the Court. The

Court **DISMISSES without prejudice** Plaintiff's Complaint, **DENIES** Plaintiff leave to proceed *in forma pauperis* on appeal, and **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Additionally, the Court: **DENIES** Plaintiff's Motion to Stay Time to Object to the October 5, 2017 Report and Recommendation or to Extend Time, (doc. 5); **DENIES** Plaintiff's Motion to Appoint Counsel, (doc. 6); **DENIES** Plaintiff's Motion for Access to Case Authorities, (doc. 7); **DENIES** Plaintiff's Motion for Reconsideration, (doc. 9); **DENIES** Plaintiff's Motion to Exceed the Ten-Page Limit on Amended Complaint, (doc. 10); and **DISMISSES as moot** Plaintiff's Motion for Subpoena and Preservation of Evidence, (doc. 12).

## BACKGROUND

Plaintiff brings his Complaint pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, *et seq.*, ("RLUIPA"). In his Complaint, Plaintiff presented a number of claims against dozens of Defendants regarding the conditions of his imprisonment at Georgia State Prison. Plaintiff generally alleged that Defendants violated his constitutional rights and the RLUIPA. (Doc. 1-1, p. 13.) Plaintiff asserted he is an adherent of the Islamic religion and contends that all Defendants maintain a policy of limiting the length of a male prisoner's facial hair. (Doc. 1-1, pp. 8–9.) He contended that the Georgia Department of Corrections' written policy requires shaving clippers to be sanitized after every use so as to avoid the spread of HIV, hepatitis, and other infectious diseases. (Id.) Plaintiff asserted, however, that Defendants disregard this written policy by using clippers that have not been sanitized or that are broken. (Id.)

Plaintiff also levied allegations against Defendants Hutcheson and Shuemake, correctional officers at Georgia State Prison, regarding an incident that occurred on July 6, 2017.

(Id. at pp. 10–12.) Plaintiff claimed that these officers escorted him to the prison's barbershop where Plaintiff refused to allow another inmate to cut his hair and demanded that he be allowed to cut his own hair. (Id.) Plaintiff told Defendants Hutcheson and Shuemake he needed to shave his own hair to ensure that he was shaved according to his religious beliefs. (Id.) When Plaintiff persisted in his refusal to allow another inmate cut his hair, Plaintiff claimed the officers slammed him to the ground, forcibly restrained him, and shaved him with clippers that had not been sanitized. (Id.) He contended that the officers then placed him on strip cell status and stripped him down to his undergarments in front of female staff members, in contravention of Plaintiff's religious beliefs. (Id.) Plaintiff also made allegations regarding the confiscation of his personal property following this incident, as well as claims that his due process rights were violated at a July 28, 2017 disciplinary hearing. (Id. at pp. 11–12.)

Plaintiff argued Defendants used excessive force to shave him and did so with unsanitary clippers, in violation of his Eighth Amendment rights. (Id. at p. 13.) Plaintiff also argued that Defendants violated his rights to religious exercise under the First Amendment to the United States Constitution and RLUIPA by stripping him to his underwear in front of females and by confiscating his property. (Id.) Further, Plaintiff made claims of retaliation and due process violations attendant to the confiscation of his property and his disciplinary hearing. (Id.)

Finally, Plaintiff asserted that he was not barred from proceeding *in forma pauperis* under the PLRA's "three strikes" provision because he meets the imminent danger exception, 28 U.S.C. 1915(g). (Id. at pp. 13–14.) Plaintiff argued he qualifies for this exception and should be allowed to proceed without paying the requisite filing fee, because Defendants maintain a policy and custom of "using force to enforce their grooming policy" and utilize non-sanitized

3

clippers in forcing inmates to shave. (Id.) He contended this policy poses an imminent threat because it will be adhered to in the future. (Id.)

After reviewing these claims and Plaintiff's Motion to Proceed *in Forma Pauperis*, the Magistrate Judge denied Plaintiff's Motion and issued a Report recommending the Court dismiss Plaintiff's Complaint. (Docs. 3, 4.) Rather than filing objections to the Report and Recommendation, on October 25, 2017, Plaintiff filed an untimely Motion to Stay Time to Object to Magistrate's October 5, 2017 Report and Recommendation or to Extend Time, wherein he argues for more time to conduct case research in opposition to the Report and Recommendation, (doc. 5). In addition to the Motion for Extension of Time, Plaintiff also filed a Motion to Appoint Counsel, (doc. 6), and a Motion for Access to Case Authorities, (doc. 7), on the same day. On November 2, 2017, Plaintiff filed Objections to the Report and Recommendation, as well as a Motion for Reconsideration of the October 5, 2017 Order, (doc. 9), and a Motion for Permission to Exceed the Ten-Page Limit on Amended Complaint, (doc. 10); Plaintiff attached a typewritten, 119-page proposed Amended Complaint to that Motion, (doc. 10-1). Plaintiff then filed a Supplemental Objection to the Report and Recommendation, (doc. 11). Finally, Plaintiff filed a Motion for Subpoena and Preservation of Evidence, (doc. 12). The Court first addresses Plaintiff's Objections and then his other filings in turn, combining his pleadings as necessary due to their repetitive nature.

## I. Plaintiff's Objections and Supplemental Objections to the Magistrate Judge's Report and Recommendation (Docs. 8, 11)

In his Objections, Plaintiff opposes each of the three grounds on which the Magistrate Judge recommended dismissal of his Complaint. Initially, it must be clarified that each of the three grounds advanced by the Magistrate Judge in recommending the dismissal of Plaintiff's Complaint—for having three "strikes" under 28 U.S.C. § 1915(g), for abusing the judicial

process, and for failing to exhaust available administrative remedies—is sufficient in and of itself to dismiss Plaintiff's Complaint in its entirety. Thus, Plaintiff must show error on all three grounds for relief. This Plaintiff cannot do.

First, Plaintiff objects to the Magistrate Judge's finding that Plaintiff does not satisfy the "imminent danger of serious physical injury" exception to the PLRA's "three strikes" provision, which bars prisoner litigants who have three or more cases dismissed as frivolous, malicious, or failing to state a claim from proceeding *in forma pauperis*. (Doc. 8, pp. 1–3.) He asserts the Magistrate Judge incorrectly focused on the past harm Plaintiff faced rather than Defendants' ongoing custom or policy of forced shaving with "unsanitized" clippers. (Id.) Plaintiff also argues that the allegations in his Amended Complaint, discussed below, further show the imminent danger posed by Defendants' alleged policy and also show he faces an imminent danger of serious physical injury because of untreated toothaches, inadequate food, threats from prison officials, and unsanitary prison conditions. (Id.) Contrary to Plaintiff's Objections, the Magistrate Judge directly addressed Plaintiff's contention regarding Defendants' alleged policy, correctly finding that allegation conclusory and factually unconnected to any specific Defendant. (Doc. 4, p. 12.) Further, as the Magistrate Judge found, Plaintiff failed to show a likelihood that any particular Defendant would shave him again in the future. (Id.) Furthermore, even if Defendants maintained such a policy, Plaintiff cannot show how being shaved, with or without sanitary clippers, poses an "imminent danger of *serious* physical injury." 28 U.S.C. § 1915(g) (emphasis added). Simply put, shaving does not pose the type of "life-threatening" serious injury contemplated by Section 1915(g). See Brown v. Johnson, 387 F.3d 1344, 1349–50 (11th Cir. 2004) (quoting Gibbs v. Cross, 160 F.3d 962, 965 (3d Cir. 1998)) (collecting cases, discussing what risks satisfy Section 1915(g), and holding that a prisoner whose medical

treatment for HIV and hepatitis was terminated, causing infection and susceptibility to other illnesses, satisfied the exception); cf. Renoir v. Brown, No. CIV A 707CV00166, 2007 WL 1052477, at *1 (W.D. Va. Apr. 5, 2007) (denial of sharp razors does not involve future serious physical injury). Unlike the plaintiff in Brown, Plaintiff's allegations here neither concern terminated medical treatment nor actual infection and susceptibility to other illnesses.

Likewise, Plaintiff's allegations in his proposed Amended Complaint do not satisfy Section 1915(g)'s imminent danger exception to the "three strikes rule" barring Plaintiff from proceeding *in forma pauperis*. Even if the Court were to allow Plaintiff to amend his Complaint as proposed, which it declines to do for the reasons discussed below, he would still fail to show he faces an imminent danger of serious physical injury. A present toothache and unsanitary prison conditions are not imminent, serious dangers. Cf., e.g., McAlphin v. Toney, 281 F.3d 709, 710 (8th Cir. 2002) (finding plaintiff's allegations that he had severe gum infection requiring five extractions, was initially denied dental extractions, and suffered decay during a six-month delay between extractions sufficient to state a claim of imminent danger of serious physical injury); Daker v. Dozier, No. 5:17-CV-0025-CAR, 2017 WL 3037420, at *6 (M.D. Ga. July 18, 2017) (finding plaintiff's allegations that "he lives with inmates who throw feces, has to wait for hours before the feces is cleaned, and [that] defendants have ignored his complaints about the unsanitary conditions and requests for cleaning supplies" insufficient to state a claim of imminent danger of serious physical injury). While inadequate food provisions and threats from prison officials could possibly meet the imminent danger exception, the Court does not find Plaintiff's conclusory allegations in this respect credible or factually plausible.[1] See Bilal v.

---

[1] See also Ball v. Allen, No. CIV.A. 06-0496-CG-M, 2007 WL 484547, at *1 (S.D. Ala. Feb. 8, 2007) (allegations of inadequate, unsanitary, and contaminated food and beverages, along with allegations of unsanitary conditions and no cleaning supplies, are insufficient to overcome the bar of § 1915(g)); Bolongogo v. Horn, Civil No. 97-4378, 1997 WL 599160 (E.D. Pa. July 23, 1997) (allegations of food

Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (noting that the PLRA authorizes courts to dismiss clearly baseless factual contentions) (citation omitted).  Furthermore, Plaintiff's Objections stemming from his proposed Amended Complaint are unrelated to his forced shaving allegations, and plaintiffs are not permitted to bring unrelated claims in a single cause of action.  Fed. R. Civ. P. 20(a)(2) (A plaintiff may not join claims and various defendants in one action unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action.").

Second, Plaintiff objects to the Magistrate Judge's finding that he mispresented his litigation history such that he abused the judicial process.  (Doc. 8, pp. 3–6; Doc 11, pp. 1–2.) Specifically, Plaintiff asserts that he did not misrepresent his prison litigation history because he lacked the necessary records to show his history and instructed the Court to "see PACER" for cases additional to the one he disclosed.  (Id.)  He also argues that he honestly answered "No" to the question of whether he had any *in forma pauperis* cases dismissed as frivolous, malicious, or for failing to state a claim, because in "none of Plaintiff's cases dismissed" for those reasons was he allowed to proceed *in forma pauperis*.  (Id.)

Although the Court did not review the docket for each of Plaintiff's *one-hundred ninety* (190) federal cases filed since 1999, a more thorough review of PACER reveals Plaintiff may be correct that he has not had a case dismissed for being frivolous, malicious, or failing to state a claim where he was also granted *in forma pauperis* status.  Nonetheless, Plaintiff's technically correct answer to that form complaint question does not excuse his manipulative failure to disclose information pertaining to his extensive and prolific litigation history.  Plaintiff's twin assertions that he cannot recall the cases he has filed without PACER access but that he correctly

---

containing unlabeled and cancerous substances, along with allegations of unsanitary general population conditions, are not sufficient to establish imminent danger of serious physical injury).

remembers none of his *in forma pauperis* cases were dismissed on the grounds noted above are contradictory and evidence a lack of candor before the Court. It strains credulity that Plaintiff remembers this precise detail as it pertains to all of his cases, yet he cannot recall his presently pending cases and can only describe a single case on his form complaint involving facts different from those at issue here. Plaintiff could have followed the form complaint's instructions and attached a sheet containing as much information about his litigation history as he could recall but did not. Although Plaintiff directed the Court to research his previous case filings on PACER, by saddling the Court with this responsibility, Plaintiff both shirks his duty of candor in pleadings before the Court and undermines the Court's interest in preserving finite judicial resources. Moreover, just as the Magistrate Judge found, Plaintiff failed to disclose all of his currently pending cases, which very obviously does not require access of past records to do. Finally, the Magistrate Judge found Plaintiff's allegations of poverty "to understate his assets in order to shirk his obligation to pay the full filing fee."[2] (Doc. 4, p. 15 n.5.) Thus, even though Plaintiff honestly answered the form question pertaining to prior dismissed cases, he still exhibited bad faith and an overall lack of candor before the Court such that the Magistrate Judge correctly determined Plaintiff's abuse of judicial process. See Attwood v. Singletary, 105 F.3d 610, 614 (11th Cir. 1997) ("A finding that the plaintiff engaged in bad faith litigiousness or manipulative tactics warrants dismissal.") (citation omitted).

Third, and finally, Plaintiff objects to the Magistrate Judge's finding that he failed to exhaust the administrative remedies available to him at Georgia State Prison. (Doc. 8, pp. 6–9.) Plaintiff argues that Georgia State Prison's grievance procedure was a "dead end" and "unavailable" to him, as contemplated by the Unites States Supreme Court's decision in Ross v.

---

[2] Other courts have found the same. See In re Daker, No. 1:11-CV-1711-RWS, 2014 WL 2548135, at *3 (N.D. Ga. June 5, 2014) ("Daker has repeatedly abused the judicial process by filing IFP affidavits that conceal and/or misstate his true assets and income.").

Blake, ___ U.S. ___, 136 S. Ct. 1850, 1858–61 (June 6, 2016). Plaintiff also contends that Georgia State Prison officials did not "process" his seven July 2017 grievances, as required by their own procedures, and returned them to him without deciding on them. (Id.) While Plaintiff complains that Georgia State Prison officials allegedly failed to heed their own grievance procedures, his Objections show that he unquestionably failed to heed the prison's grievance procedure himself when he simultaneously filed seven grievances in July 2017. See Simpson v. Allen, No. 6:15-cv-118, 2016 WL 5024226, at *6–7 (S.D. Ga. Sept. 16, 2016) (discussing Georgia State Prison's grievance procedure, Standard Operating Procedure ("SOP") IIB05-0001, which mandates that "an inmate may only have two active grievances pending at one time" unless the inmate grievance meets one of three exceptions, and finding that such a restriction does not render a grievance process "unavailable"), *report and recommendation adopted*, 2016 WL 6609195 (S.D. Ga. Nov. 7, 2016).

Furthermore, Plaintiff's excessive number of grievances aside, he plainly admits he did not appeal any adverse decision to the highest level possible in the administrative procedure, (doc. 1-1, p. 4), which is required to properly exhaust. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)). Plaintiff unsuccessfully attempts to excuse his failure to appeal by arguing that his grievances were "unprocessed," thereby rendering the grievance system "unavailable" to him. (Doc. 8, p. 6.) Such a contention fails at the outset because Georgia State Prison's grievance procedure authorizes and requires a grievant to appeal his grievance after the grievance coordinator rejects it, after the warden responds to it, or *when the time allowed for the warden's decision has expired.* Shaw v. Toole, No. 6:14-CV-48, 2015

WL 4529817, at *5 (S.D. Ga. July 27, 2015) (citing SOP IIB05-0001) (emphasis added) ("The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond."), *report and recommendation adopted*, 2015 WL 5025478 (S.D. Ga. Aug. 24, 2015). Because Plaintiff filed this action only one month after he filed his seven grievances, (doc. 1-1), he neither waited the required amount of time for the warden's decision nor filed an appeal once that time expired, as required by the SOP. Thus, Plaintiff unquestionably failed to properly exhaust his grievances, irrespective of any "unprocessed" grievance allegations. As the Magistrate Judge stated, "[g]iven that Plaintiff failed to take basic steps to pursue GSP's administrative remedies, he cannot now complain that that those remedies were unavailable to him."[3] (Doc. 4, p. 20.)

Accordingly, the Court **OVERRULES** Plaintiff's Objections and Supplemental Objections, (docs. 8, 11), and **ADOPTS** the Magistrate Judge's Report and Recommendation as the opinion of the Court. Nevertheless, the Court still addresses Plaintiff's remaining pleadings.

II.     **Motion to Stay Time to Object to Magistrate's October 5, 2017 Report and Recommendation or to Extend Time and Motion for Access to Case Authorities (Docs. 5, 7)**

In these Motions, Plaintiff asks the Court to issue a stay to permit Plaintiff to file Objections to the Magistrate Judge's Report and Recommendation, pending a ruling on his Motion for Access to Case Authorities, or, in the alternative, to grant an extension of time in which to file objections. (Doc. 5, pp. 1–2.) Plaintiff contends he is supposed to have access to the law library but does not because the prison's lockdown unit lacks a satellite law library.

---

[3] Additionally, Plaintiff contends the Magistrate Judge erred in recommending dismissal on this ground because exhaustion is an affirmative defense that has yet to be asserted. (Doc. 8, p. 9.) While exhaustion is an affirmative defense, courts are to dismiss lawsuits at frivolity review where a prisoner's complaint clearly admits or shows a failure to exhaust. See Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2007) (citation omitted). Moreover, Plaintiff's apparent belief that Georgia State Prison's grievance procedure is futile does not excuse him from the exhaustion requirement. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).

(Doc. 7, p. 2.) Plaintiff asserts the Magistrate Judge cited to numerous statutes, rules, and cases, and he does not have access to these authorities, rendering him unable to formulate Objections or to distinguish these authorities from his cause of action. (Id.) Plaintiff seeks an Order directing Defendants to provide Plaintiff with the authorities cited or for the Court to do so. (Id. at p. 3.)

Plaintiff offers no compelling reason why he cannot formulate Objections to the Report and Recommendation without having access to the authorities the Magistrate Judge cited. Because the Magistrate Judge recommended Plaintiff's Complaint be dismissed in the first instance based on Plaintiff's personal litigation history, which renders him ineligible to proceed *in forma pauperis* under the PLRA's "three strikes" provision, external case law is unnecessary to formulate a response. (Doc. 4.) As this ground concerns Plaintiff's own case history, he could easily respond to this recommendation without having the cited case authorities. To be sure, Plaintiff did just that by filing Objections to the Report and Recommendation as two of the litany of pleadings he has filed since the Magistrate Judge issued his Report and Recommendation. (Docs. 8, 11.) Plaintiff's actions since the Magistrate Judge issued his Report and Recommendation belie any contention that Plaintiff cannot respond to this Court's rulings or directives without extra time or Court-ordered legal research access. Specifically, in four of his post Report and Recommendation pleadings, Plaintiff has been able to provide the Court with citations to and discussion of various federal statutes and extensive case law, including cases cited in the Report and Recommendation. (See Docs. 6, 8, 10–12.) Further, in light of the Court's consideration of Plaintiff's untimely Objections above, an additional extension of time is not warranted. In short, Plaintiff's actions either contradict or undermine the reasons advanced in these Motions.

Accordingly, the Court **DENIES** Plaintiff's Motion to Stay Time to Object to Magistrate's October 5, 2017 Report and Recommendation or to Extend Time and his Motion for Access to Case Authorities.

## III.    Motion to Appoint Counsel (Doc. 6)

Plaintiff requests the Court appoint him counsel for the limited purpose of assisting Plaintiff with the drafting of his Amended Complaint. In this civil case, Plaintiff has no constitutional right to the appointment of counsel. Wright v. Langford, 562 F. App'x 769, 777 (11th Cir. 2014) (citing Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999)). "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." Id. (citing Bass, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner." Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing Poole v. Lambert, 819 F.2d 1025, 1028 (11th Cir. 1987), and Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985)). The Eleventh Circuit Court of Appeals has explained that "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." McDaniels v. Lee, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993)).

The Court has reviewed the record and pleadings in this case and finds no "exceptional circumstances" warranting the appointment of counsel. While the Court understands that Plaintiff is incarcerated, this Court has repeatedly found that "prisoners do not receive special

consideration notwithstanding the challenges of litigating a case while incarcerated." Hampton v. Peeples, No. CV 614-104, 2015 WL 4112435, at *2 (S.D. Ga. July 7, 2015). "Indeed, the Eleventh Circuit has consistently upheld district courts' decisions to refuse appointment of counsel in 42 U.S.C. § 1983 actions similar to this case for want of exceptional circumstances." Id. (citing Smith v. Warden, Hardee Corr. Inst., 597 F. App'x 1027, 1030 (11th Cir. 2015); Wright, 562 F. App'x at 777; Faulkner v. Monroe Cty. Sheriff's Dep't, 523 F. App'x 696, 702 (11th Cir. 2013); McDaniels, 405 F. App'x at 457; Sims v. Nguyen, 403 F. App'x 410, 414 (11th Cir. 2010); Fowler, 899 F.2d at 1091, 1096; and Wahl, 773 F.2d at 1174). This case is not so complex legally or factually to prevent Plaintiff from presenting "the essential merits of his position" to the Court. In fact, the sheer volume of pleadings Plaintiff has filed with the Court is clearly indicative of his ability to present this Court with the essential merits of his position. The Magistrate Judge's recommended dismissal of Plaintiff's Complaint was not due to his inability to communicate or his inability to present the essential merits of his forced shaving claims. Rather, the Magistrate Judge recommended Plaintiff's Complaint be dismissed on grounds that were distinct from the merits of his Complaint, grounds which would not be remedied by the appointment of counsel.

For these reasons, the Court **DENIES** Plaintiff's Motion to Appoint Counsel.

**IV.     Motion for Reconsideration of the October 5, 2017 Order (Doc. 9)**

Plaintiff seeks reconsideration Court's October 5, 2017 Order denying his Motion to Proceed *in Forma Pauperis*. Plaintiff maintains that his Objections and first Amended Complaint provide basis for reconsideration.

A motion for reconsideration, or a Federal Rule of Civil Procedure 59(e) motion, is "an extraordinary remedy, to be employed sparingly." Smith ex rel. Smith v. Augusta-Richmond

Cty., No. CV 110-126, 2012 WL 1355575, at *1 (S.D. Ga. Apr. 18, 2012) (internal citation omitted). "A movant must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Id. (internal citation omitted). "The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." Jacobs v. Tempur-Pedic Intern., Inc., 626 F.3d 1327, 1344 (11th Cir. 2010) (quoting In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999) (internal punctuation omitted)). "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Id. (quoting Michael Linet, Inc. v. Village of Wellington, 408 F.3d 757, 763 (11th Cir. 2005) (alterations omitted)).

The Court discerns no reason to grant Plaintiff's Motion. He fails to present any newly-discovered evidence in support of his request, and he does not demonstrate that the Court's previously-entered Order represents a manifest error of law or fact. In fact, Plaintiff's Motion is nothing more than a duplicative filing of his Objections to the Magistrate Judge's Report and Recommendation, which the Court already considered and overruled.

Accordingly, the Court **DENIES** Plaintiff's Motion for Reconsideration.

V.    **Motion for Permission to Exceed the Ten-Page Limit on Amended Complaint (Doc. 10)**

Plaintiff seeks the Court's permission to amend his Complaint and to exceed the ten-page attachment limit the Magistrate Judge allotted him when advising Plaintiff to submit an Amended Complaint in a separate, but related, case Plaintiff brought. Order, Daker v. Bryson, et al., 6:17-cv-79 (S.D. Ga. July 20, 2017), ECF No. 21. In support of his Motion, Plaintiff states the ten-page attachment limit is impossible for him to meet, this limit violates Federal Rule of Civil Procedure 18, and it violates the Simmons principle. (Doc. 10, pp. 1–2.) Plaintiff attached to this Motion his "First Amended and Supplemental Complaint." (Doc. 10-1.)

Plaintiff's proposed Amended Complaint is 119-typewritten pages, comprised of nearly 700 paragraphs and brought against 116 different Defendants. (Id.) The Court notes that Plaintiff submitted the same Motion and proposed Amended Complaint in another case before this Court.[4] He names individuals in this Amended Complaint the District Court for the Middle District of Georgia and this Court already dismissed in Daker v. Bryson, et al., 6:17-cv-79 (S.D. Ga. Dec 6, 2017), ECF No. 42, and this Amended Complaint still includes unrelated claims. Moreover, Plaintiff has included claims in his Amended Complaint that post-date the filing of his original Complaint and are not related to the claims in his original Complaint, and he seeks to include new Defendants. This attempt to file the same Amended Complaint in two distinct cases clearly violates Federal Rule of Civil Procedure 20 by combining separate and unrelated claims against separate and unrelated Defendants into a single cause of action maintained on two fronts. Plaintiff's action—filing the same voluminous complaint containing scores of unrelated claims and defendants—typifies the frivolous and vexatious nature of Plaintiff's filings.

Furthermore, the ten-page attachment limit to the Section 1983 form complaint does not violate Federal Rule of Civil Procedure 18(a), as Plaintiff contends. Rule 18(a) provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). "However, 'multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act ["PLRA"] limits to 3 the number of

---

[4] Compare Mot., Daker v. Bryson, et al., 6:17-cv-79 (S.D. Ga. Nov. 2, 2017), ECF No. 41, with (Docs. 10, 10-1.). The Court denied Plaintiff's Motion in that case, Order, Daker v. Bryson, et al., 6:17-cv-79 (S.D. Ga. Dec. 6, 2017), ECF No. 42, and does so again here.

frivolous suits or appeals that any prisoner may file without prepayment of the required fees.'"

Smith v. Conner, No. 8:12-CV-52-T-30AEP, 2012 WL 1676643, at *1 (M.D. Fla. May 14, 2012) (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)). Thus, while Plaintiff can assert as many claims against *one* Defendant in this cause of action, he cannot bring unrelated claims against all Defendants in a single cause of action.

Finally, Plaintiff's reliance on Simmons v. United States, 390 U.S. 377 (1967), is misplaced. In Simmons, the Supreme Court discussed whether a criminal defendant who testifies in support of a Fourth Amendment suppression issue waives his Fifth Amendment right against self-incrimination during later proceedings. The Supreme Court determined it "intolerable" for one constitutional right to be surrendered at the sake of another and held, "that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." Simmons, 390 U.S. at 394. The Magistrate Judge directing Plaintiff to narrow his claims to related claims in no way limits the exercise of Plaintiff's constitutional rights, especially those of the same magnitude as the rights involved in Simmons. By limiting his constitutional claims in this lawsuit to those that are related to one another, Plaintiff would not be faced with the choice of sacrificing his other constitutional rights like the testifying defendant in Simmons. Rather, Plaintiff could file his other unrelated, constitutional claims in a separate lawsuit.

In sum, Plaintiff's proposed Amended Complaint in no way comports with the letter or spirit of the Federal Rules of Civil Procedure or the Magistrate Judge's instructions. Having already been instructed in another case on how to properly amend his Complaint, Plaintiff consciously chose to persist in presenting a morass of unrelated claims, and in fact, doubled

down on those efforts by filing the same deficient Amended Complaint in two separate cases. In light of Plaintiff's disregard of the Federal Rules of Civil Procedure and this Court's instructions on how to amend, the Court once again finds Plaintiff's proposed Amended Complaint improper.

Consequently, the Court **DENIES** Plaintiff's Motion for Permission to Exceed the Ten-Page Limit on Amended Complaint and his proposed Amended Complaint.

## VI.    Motion for Subpoena and Preservation of Evidence (Doc. 12)

In this Motion, Plaintiff requests the Court to subpoena or issue an order preserving surveillance videos of his cell being contaminated with feces from another inmate. According to Plaintiff, this evidence will show that his placement in segregation constitutes an "atypical hardship" due to the "denial of sanitation." (Doc. 12, p. 5.) For the reasons set forth in Sections I, II, IV, and V above, the Court **DISMISSES as moot** Plaintiff's Motion for Subpoena and Preservation of Evidence.

## CONCLUSION

The Court **OVERRULES** Plaintiff's Objections, (docs. 8, 11), and **ADOPTS** the Magistrate Judge's Report and Recommendation, (doc. 4), as the opinion of the Court. The Court **DISMISSES without prejudice** Plaintiff's Complaint, **DENIES** Plaintiff leave to proceed *in forma pauperis* on appeal, and **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Additionally, the Court: **DENIES** Plaintiff's Motion to Stay Time to Object to Magistrate's October 5, 2017 Report and Recommendation or to Extend Time, (doc. 5); **DENIES** Plaintiff's Motion to Appoint Counsel, (doc. 6); **DENIES** Plaintiff's Motion for Access to Case Authorities, (doc. 7); **DENIES** Plaintiff's Motion for Reconsideration, (doc. 9); **DENIES** Plaintiff's Motion to Exceed the Ten-Page Limit on Amended Complaint, (doc. 10);

and **DISMISSES as moot** Plaintiff's Motion for Subpoena and Preservation of Evidence, (doc. 12).

**SO ORDERED**, this 29th day of January, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA